UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERICKA MELANIE
DOBBS,

                Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

_____/

Case No. 1:18-CV-11903
District Judge Thomas L. Ludington
Magistrate Judge Anthony P. Patti

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 19), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 21) and AFFIRM THE COMMISSIONER'S DECISION

**I.**     **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 19), **GRANT** Defendant's motion for summary judgment (DE 21),

and **AFFIRM** the Commissioner's decision.

**II.**     **REPORT**

Plaintiff, Ericka Melanie Dobbs, brings this action under 42 U.S.C. § 405(g)

for review of a final decision of the Commissioner of Social Security

("Commissioner") denying her applications for Disability Insurance (DI) benefits

and Supplemental Security Income (SI) benefits.  This matter is before the United

States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (DE 19), the Commissioner's cross-motion for summary judgment (DE 21), Plaintiff's reply (DE 23) and the administrative record (DE 14).

### A.   Background and Administrative History

Plaintiff alleges her disability began on January 1, 2004, at the age of 22. (R. at 217.)  Plaintiff subsequently amended the alleged onset date to September 21, 2011.  (R. at 683.)  In her disability report, she lists back injury, migraines, nerve damage, endometriosis, and insomnia as limiting her ability to work.  (R. at 222.)  Her applications were denied on August 8, 2016.  (R. at 87-114.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R. at 153-154.)  On November 15, 2017, ALJ John Dodson held a hearing, at which Plaintiff and a vocational expert (VE), Kelly A. Stroker, testified.  (R. at 28-64.) On January 4, 2018, ALJ Dodson issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 8-27.)

Plaintiff submitted a request for review of the hearing decision/order.  (R. at 198-99.)  However, on April 16, 2018, the Appeals Council denied Plaintiff's request for review.  (R. at 1-5.)  Thus, ALJ Dodson's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on June 15, 2018.

2

### B.    Plaintiff's Medical History

The administrative record contains approximately 436 pages of medical records, which were available to the ALJ at the time of his January 4, 2018 decision.  (R. at 246-682 [Exhibits B1F-B6F].)  These materials will be discussed in detail, as necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 21, 2011, the amended alleged onset date.  (R. at 13.)  At **Step 2**, the ALJ found that Plaintiff has the following severe impairments:  degenerative disc disease of the lumbar spine, mild chronic bilateral L5 and S1 radiculopathy, mild chronic bilateral C7 polyradiculopathy, cervicalgia, history of endometriosis, history of uterine fibroids, migraine headaches, anxiety, and borderline personality disorder.  (*Id*. at 13-14.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id*. at 14-15.)  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined that Plaintiff had the RFC:

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations.

> … to perform light work … with the following limitations:  the claimant cannot climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, crawl, balance, and climb ramps and stairs. [*i.e., postural limitations*] The claimant is limited to simple, unskilled work involving only routine, repetitive tasks, and with only occasional changes in work setting. The claimant cannot be subject to production like standards. [*i.e., mental limitations*] The claimant must avoid concentrated exposure to hazards.  The claimant requires an environment with office-type lighting. [*i.e., environmental limitations*]

(*Id*. at 15-22.)  At **Step 4**, the ALJ determined that Plaintiff has no past relevant work.  (*Id*. at 22.)  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as office cleaner, gate attendant, and inspector.  (*Id*. at 22-23.)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since September 21, 2011.  (*Id*. at 23.)

## D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

---

20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff alleges three claims of error:  (1) the ALJ erred in evaluating whether Plaintiff met or equaled Listing 1.04A; (2) the ALJ's RFC is not supported by substantial evidence; and, (3) the ALJ's subjective symptom analysis is flawed. (DE 19 at 2, 12-24.)  The Commissioner contends that substantial evidence supports the ALJ's  decision and that: (1) he did not commit any Step 3 error; (2) his RFC is supported by substantial evidence; and (3) he properly evaluated Plaintiff's subjective symptoms complaints.  (DE 21 at 5-27.)

### 1.    The ALJ did not commit error at Step 3

Plaintiff argues that the ALJ erred at Step 3 of the sequential analysis because he "failed to even name and thus clearly did not consider whether [Plaintiff's] impairments met or medically equaled Listing 1.04A [Disorders of the spine]."  (DE 19 at 12-15.)  Plaintiff lists evidence that she contends "should have been considered and supports a Step Three equivalency determination."  (*Id.* at 12-

13.)  The Commissioner argues that the ALJ did not commit any error at Step 3.

(DE 21 at 5-11.)

### a.  The ALJ adequately considered the listings

In finding that Plaintiff did not have any impairments that meet or medically

equal a listing, the ALJ stated, in relevant part:

> Although the claimant has "severe" physical impairments [of
> degenerative disc disease of the lumbar spine, mild chronic bilateral L5
> and S1 radiculopathy, mild chronic bilateral C7 polyradiculopathy,
> cervicalgia, history of endometriosis, history of uterine fibroids, and
> migraine headaches], they do not meet the criteria of any listed
> impairment described in Appendix 1 of the Regulations (20 CFR, Subpt
> P, Appendix 1).  No treating or examining physician has mentioned
> findings equivalent in severity to the criteria of any listed impairment,
> nor does the evidence show medical findings that are the same or
> equivalent to those of any listed impairment of the Listing of
> Impairments.

(R. at 14.)  The ALJ then further addressed the severity of Plaintiff's mental

impairments and whether they met or medically equaled Listings 12.06 and 12.08,

including whether the "paragraph B" and "paragraph C" criteria were satisfied.

(*Id.* at 14-15.)

While the ALJ's Step 3 finding did not specifically identify Listing 1.04 as

one of the "listed impairments" considered, "it is well-settled that the Court may

look at the rest of the ALJ's decision in order to determine whether substantial

evidence supports the ALJ's Step Three determination."  *Smukala v. Comm'r of*

*Soc. Sec.*, No. 15-10612, 2016 WL 943953, at *10 (E.D. Mich. Feb. 23, 2016),

*report and recommendation adopted*, 2016 WL 931161 (E.D. Mich. Mar. 11, 2016); *Gower v. Comm'r of Soc. Sec.*, No. 13-14511, 2015 WL 163830, at \*9 (E.D. Mich. Jan. 13, 2015) (holding that an ALJ does not err where his Step Three findings are supported by findings at Step Four).

Listing 1.04 governs "Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. A review of the ALJ's decision reveals that: (1) he plainly recognized that Plaintiff had "severe impairments" of degenerative disc disease of the lumbar spine, mild chronic bilateral L5 and S1 radiculopathy, mild chronic bilateral C7 polyradiculopathy, and cervicalgia; (2) he considered the listings with regard to these "severe impairments;" and, (3) he carefully considered the record evidence regarding these impairments, including medical examinations and diagnostic testing for the 2010 through 2017 time period. (R. at 17-21.) Thus, although the ALJ did not specifically identify Listing 1.04 as one of the listings considered at Step 3, a review of the record as a whole reveals that he adequately considered it.

### b. The ALJ's equivalency finding is supported by substantial evidence

At Step 3 of the sequential analysis, the plaintiff bears the burden of establishing that her impairments meet or medically equal a listed impairment. *See*

8

*Bingaman v. Comm'r of Soc. Sec.*, 186 F. App'x 642, 644 (6th Cir. 2006).  Plaintiff

does not appear to challenge the ALJ's finding that she does not *meet* the

requirements of Listing 1.04A (*see* DE 19 at 12-15 (discussing only evidence she

asserts "supports a Step Three equivalency determination")), and thus any such

argument is waived.  *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466

(6th Cir. 2003) (undeveloped claims are waived).

Plaintiff instead provides a list of evidence she contends "should have been

considered and supports a Step Three equivalency determination."  (DE 19 at 12-

13.) "When a claimant has a listed impairment but does not meet the criteria, an

ALJ can find that the impairment is 'medically equivalent' to the listing if the

claimant has 'other findings related to [the] impairment that are at least of equal

medical significance to the required criteria.'"  *Thomas v. Comm'r of Soc. Sec.*,

No. 12-14758, 2014 WL 688197 (E.D. Mich. Feb. 21, 2014) (quoting 20 C.F.R. §

416.926(a)).  Under Social Security Ruling (SSR) 17-2p, which became effective

in March 2017, the ALJ is "not require[d] … to obtain [medical expert] evidence

or medical support staff input prior to making" a determination at Step 3 that

Plaintiff's impairments do not medically equal a listing, nor is he required to

specifically articulate the bases for that conclusion.  *See* SSR 17-2p, 2017 WL

3928306, at *4 (Mar. 27, 2017) ("Generally, a statement that the individual's

impairment(s) does not medically equal a listed impairment constitutes sufficient

articulation for this finding."). *See also Cooper v. Comm'r of Soc. Sec.*, No. 18-12611, 2019 WL 2240711, at *5 (E.D. Mich. Apr. 8, 2019) (collecting cases holding that SSR 17-2p makes clear that an ALJ is not required to obtain a medical expert's opinion before making a finding that an individual's impairments do not meet or equal a listed impairment), *report and recommendation adopted by* 2019 WL 2208151 (E.D. Mich. May 22, 2019). Thus, because ALJ Dodson fond that the evidence did not reasonably support a finding that Plaintiff's impairments medically equaled any listing, he was not required to specifically articulate the bases for his conclusion. *Id.* (*See* R. at 14.)

Listing 1.04(A) requires a disorder of the spine "resulting in compromise of a nerve root (including the cauda equina) or the spinal cord" with:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A. "To establish the equivalent of nerve-root compression [Plaintiff] must demonstrate a lack of motor strength, a lack of sensory functions, and a positive straight-leg raising test, among other things," and "[a]s for spinal-cord compression, [Plaintiff] must show that she cannot 'ambulate effectively,' among other criteria." *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011).

Plaintiff lists a variety of records, including diagnostic tests and examination reports, that she contends supports a Step Three equivalency determination. (DE 19 at 12-13.) However, she provides no developed argument, as is her burden, supporting *how* that evidence medically equals Listing. 1.04. "A claimant must do more than point to evidence on which the ALJ could have based his finding to raise a substantial question as to whether [s]he has satisfied a listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014). "Rather, the claimant must point to specific evidence that demonstrates [s]he reasonably could meet or equal every requirement of the listing." *Id.* This Plaintiff has not done.

Rather, substantial evidence supports the ALJ's Step 3 determination. As the Commissioner properly points out, there is no evidence of nerve root compression (R. at 283-84, 351, 371 373), no observations of limited range of motion (R. at 308, 310, 312, 317, 323, 325, 327, 329, 331, 335, 337, 339, 341, 349, 355, 361, 376, 595), Plaintiff had 5/5 strength in her lower and upper extremities, and muscle weakness was not documented (R. at 247, 250, 253, 256, 258, 264, 266, 273, 376, 379, 382, 385), and there is no evidence that straight leg raising was performed. Further, contrary to Plaintiff's assertion, the state agency doctor did consider the listings and opined that "[t]he medical evidence in file does not establish a condition that meets or equals a listing." (R. at 94.)

Moreover, Plaintiff's contention, even if true, that substantial evidence in the record *could* support a finding of equivalency to the criteria of Listing 1.04A does not require a remand, because an ALJ's decision cannot be reversed merely because there exists some other evidence in the record that might support a different conclusion. *See Pitts v. Comm'r of Soc. Sec.*, No. 17-cv-10184, 2018 WL 1221867, at *6 (E.D. Mich. Feb. 14, 2018 ) (the ALJ's step three determination "falls within the ALJ's zone of choice" and thus "his step-three determination that Plaintiff's impairments do not meet Listing 12.05C should not be disturbed"), *report and recommendation adopted by* 2018 WL 1203500 (E.D. Mich. Mar. 8, 2018).

Finally, Plaintiff's contention that the ALJ's analysis is insufficient, citing *Reynolds v. Commissioner of Social Security*, 424 F. App'x 411 (6th Cir. 2011), fails.  The *Reynolds* court suggested that an insufficient listing or equivalency analysis "was not harmless, for the regulations indicate that if a person is found to meet a Listed Impairment, they are disabled within the meaning of the regulations and are entitled to benefits; no more analysis is necessary." *Id.* at 415.  There, the court found that this required remand without additional analysis of whether the claimant's impairments actually met or equaled a listing.  *Id.*

However, the unpublished decision in *Reynolds* and its progeny has been undermined by other, more recent Sixth Circuit decisions (which are also

unpublished). These have declined "to require remand when the ALJ provides minimal reasoning at step three of the five-step inquiry" if the ALJ "made sufficient factual findings elsewhere in his decision to support his conclusions at step three." *See, e.g., Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365-66 (6th Cir. 2014) (finding that any error in the ALJ's Step 3 findings "is harmless, because Forrest has not shown that his impairments met or medically equaled in severity any listed impairments"); *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) (finding that ALJ's determination was supported by evidence in the record, and thus it was unnecessary for the ALJ to make specific findings regarding a particular listed impairment).  Rather, the more recent case law indicates that any error with respect to the ALJ's Step 3 analysis is harmless unless the claimant can establish that she satisfied the listing in question. *Forrest*, 591 F. App'x at 366 (distinguishing *Reynolds* and holding any error harmless "because Forrest has not shown that his impairments met or medically equaled in severity any listed impairment").  This is consistent with the fact that "during the first four steps [of the sequential analysis], the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

A review of the ALJ's opinion, in its entirety, reveals that he did carefully consider the record evidence regarding Plaintiff's severe impairments.

13

Accordingly, substantial evidence supports the ALJ's Step 3 determination and

Plaintiff's first claim of error should be denied.

### 2. The ALJ's RFC is supported by substantial evidence

The ALJ assessed Plaintiff with an RFC for a reduced range of light work,

with additional postural and environmental limitations, and limitations to simple,

unskilled work involving only routine, repetitive changes, only occasional changes

in work setting, and no production-like standards requirement. (R. at 15.) In

reaching this RFC, the ALJ considered the RFC finding on Plaintiff's prior, denied

disability application under *Drummond v. Commissioner of Social Security*, 126

F.3d 837 (6th Cir. 1997),[2] but found that "the evidence of record shows that the

claimant's medical condition, in certain respects, has *changed* since the time that

[the prior ALJ] made his determination." (*Id.*; R. at 69-77 (emphasis added).)

Specifically, the ALJ found that:

> … the evidence of record shows that the claimant's medical condition,
> in certain respects, has changed since the time that Administrative Law
> Judge Sasena made his determination. While it is found that the
> claimant is capable of light work, it is found that her back and neck pain
> would interfere with her ability to climb ladders, ropes, and scaffolds.
> It is also found that the record does not support a need to alternate sitting
> and standing after fifteen minutes. The claimant did not testify to a need
> to alternate sitting and standing/walking so frequently, and the

---

[2] The prior ALJ determined on July 18, 2011 that Plaintiff had the RFC "to
perform light work … except that she requires a sit or stand option after 15
minutes; can occasionally climb, balance, stoop, kneel, crouch, or crawl; and is
limited to simple, routine, repetitive tasks that require little judgment and can be
learned in a short period." (R. at 72.)

> treatment records do not support such a need. The claimant complained
> of pain, but a need to change positions so frequently was not discussed.
> It is found that the claimant's complaints of headaches with
> photophobia support a limitation to office-type lighting.

(R. at 15.)  In reaching this RFC determination, the ALJ considered Plaintiff's

testimony, the objective medical evidence (which primarily documents the time

period *post*-dating the prior July 18, 2011 ALJ decision), the opinion evidence of

the state agency doctor, and Plaintiff's daily activities.  (*Id.* at 15-22.)

Plaintiff contends that the ALJ improperly found that she no longer needed

to alternate sitting and standings after fifteen minutes, because he has not pointed

to any evidence that Plaintiff "has improved from the prior hearing."  (DE 19 at

15-16.)  However, the ALJ did not claim that Plaintiff's condition had "improved,"

but rather that stated that it has "changed" since the prior ALJ's decision, for the

reasons stated above, resulting in a different RFC.  (R. at 15.)

Since Plaintiff filed this action, the Sixth Circuit issued its opinion in *Early*

*v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018), which examined

the principles of *res judicata* as it pertains to a subsequent application for disability

benefits involving a different time period.  The court noted that the doctrine of *res*

*judicata* bars re-litigation of the *same* claim, but not litigation of a new claim,

stating that "a claim that one became disabled in 1990 is not the same as a claim

that one became disabled in 1994."  *Id.* at 933.  Thus, explained the court, "[w]hen

an individual seeks disability benefits for a distinct period of time, each application

is entitled to review" and principles of *res judicata* "do not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings." *Id.* at 931, 933.

The ALJ issued his decision in January 2018 with a pre-*Early* understanding of *Drummond*, which resulted in his conclusion that he was bound by the prior decision "absent evidence of an improvement or change in condition since the prior hearing." (R. at 15.) Nevertheless, a thorough review of the ALJ's decision and the record before him reveals that the ALJ did indeed conduct a "fresh look" at the evidence in the record (most of which post-dates the prior ALJ decision), thus satisfying *Early*. *See Brent v. Comm'r of Soc. Sec.*, No. 17-12654, 2018 WL 5118598, at *7 (E.D. Mich. Aug. 21, 2018) ("Having reviewed th[e] new evidence thoroughly to make his own determination at Step Two, the ALJ gave a 'fresh look' at the evidence on her back pain."), *report and recommendation adopted by* 2018 WL 4403418 (E.D. Mich. Sept. 17, 2018). Moreover, the ALJ was clearly "mindful of past rulings and the record in prior proceedings," discussing them explicitly. *Early*, 893 F.3d at 933. (*See* R. at 15.) Plaintiff has failed to point to anything in the current record—either in testimony or medical records – that mentions the inability to sit or stand for extended periods of time, or a need to

16

alternate between sitting and standing.  Plaintiff points to her MRIs an EMGs, but such diagnostic testing does not dictate *functional* limitations.  *See Flowers v. Comm'r of Soc. Sec.*, No. 14-12449, 2015 WL 4274961, at *4 (E.D. Mich. July 14, 2015) (stating that clinical diagnostic evidence "provide[s] no insight into what additional limitations Plaintiff may suffer from based on the diagnoses therein").

In addition, Plaintiff's reference to evidence "reflect[ing] problems with falls" is unavailing, as the evidence she cites is a May 2016 treatment note when she fell and injured the "big toe" on her left foot, and she reported that the pain from the traumatic injury to her toe was worsened by walking and standing.  (R. at 599-605.)  Tellingly, the treater reported that this was Plaintiff's only fall in the past year and that she was not considered to be at risk for falls.  (R. at 502, 605.)  In addition, the ALJ was not bound to accept in full the opinion of the state agency reviewing physician, Twaide Langham, D.O., who opined that the RFC from the prior ALJ should be adopted.  (R. at 92-96, 107-110.)  As ALJ Dodson explained, he gave this opinion "some weight," but he found that the record evidence, including Plaintiff's testimony, did not support a need to alternate sitting and standing after fifteen minutes.  (R. at 21.)  And Plaintiff's argument that the ALJ "fail[ed] to develop" the record regarding Plaintiff's need to alternate sitting and standing is without merit.  As a general rule, "[t]he burden of providing a complete record … rests with the claimant," *Landsaw v. Sec'y of Health & Human Servs.*,

803 F.2d 211, 214 (6th Cir. 1986), and "the ALJ did not have a special duty to develop the record because [Plaintiff] was represented by counsel." *Culp v. Comm'r*, 529 F. App'x 750, 751 (6th Cir. 2013).

Finally, contrary to Plaintiff's characterization, the present RFC is not "less restrictive" than the prior one.  Rather, while it does not include the sit/stand limitation, it does also include several *additional* limitations, including that Plaintiff "cannot climb ladders, ropes, or scaffolds," "must avoid concentrated exposure to hazards," "requires an environment with office type lighting," and can accommodate "only occasional changes in work setting."  (R. at 15.)  Thus, this RFC is not "less restrictive," but it is different.  Notably, *Early* does not require a finding of an "improvement" in Plaintiff's condition, but that the ALJ to give the evidence a "fresh look."   The ALJ did just that, and his RFC finding is supported by substantial evidence.  Therefore, Plaintiff's second claim of error should be denied.

### 3.     The ALJ's subjective symptoms analysis is supported by substantial evidence

Plaintiff argues that the ALJ's evaluation of her subjective complaints is flawed.  (DE 19 at 18-24.)  The Commissioner responds that the ALJ properly evaluated Plaintiff's subjective symptomatic complaints under SSR 16-3p.  (DE 21 at 16-27.)

The ALJ is required to engage in a two-step process to evaluate a claimant's subjective symptoms and complaints.  SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).  First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain."  *Id.* at *3; *see also* 20 C.F.R. § 416.929.  "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limits an individual's ability to perform work-related activities…."  SSR 16-3p, 2017 WL 5180304, at *3.

A review of the ALJ's decision shows that he properly evaluated Plaintiff's subjective complaints of pain and functional limitations under this two-step process.  He found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the [complained of] symptoms," but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (R. at 16-17.)  The ALJ conducted a thoughtful and very detailed discussion of the record evidence relating to all of Plaintiff's impairments for the 2011 through 2017 time period.  (R. at 17-

22.) The ALJ then provided the following summary identifying the evidence that

he found to be inconsistent with Plaintiff's subjective symptomatic complaints:

> In sum, it is found that the record does not provide evidence of any impairment or combination of impairments that render the claimant unable to work. Images of the claimant's spine reflect only mild abnormalities, with no significant stenosis. The claimant has not received injection treatments for musculoskeletal pain since 2013, and there is no record of physical therapy. The claimant did not consult with a surgeon. The claimant's pain management specialist noted consistently that the claimant's pain was stable and that her medication improved functionality. Reduced sensation was noted in the claimant's upper and lower extremities at numerous exams, but the record does not provide evidence that this issue significantly interferes with the claimant's functionality. She did not complain of difficulties gripping or holding to any of her providers. The claimant testified that she has not taken any medications since October 2016, and earlier medication non-compliance is noted in the record. The claimant's testimony regarding the severity of her headaches is not supported. The claimant has not treated with her neurologist since October 2016. Her EEG and brain MRI were normal. Records from the claimant's gynecologist note cysts and a history of endometriosis, but no surgery was recommended. The claimant was referred to a pelvic pain clinic on several occasions, but declined. The claimant's psychotropic medications were prescribed by her internist. She was consistently referred to a psychiatrist, but declined. It was noted in 2013 that the claimant was treating with a psychologist and found it helpful, but there are no notes from a counselor. The claimant's overall lack of mental health treatment indicates that her symptoms are not as severe as alleged.

(R. at 22.) The ALJ thus discussed the nature and extent of Plaintiff's treatment, as

well as whether she complied with prescribed treatment and medications, in

finding that her "statements concerning the intensity, persistence and limiting

effects of these symptoms are not entirely consistent with the medical evidence and

other evidence in the record[.]"  (R. at 17.)  This analysis is proper and consistent

with SSR 16-3p, which states:

> We will consider an individual's attempts to seek medical
> treatment for symptoms and to follow treatment once it is
> prescribed when evaluating whether symptom intensity and
> persistence affect the ability to perform work-related
> activities…..  [I]f the frequency or extent of the treatment sought
> by an individual is not comparable with the degree of the
> individual's subjective complaints, or if the individual fails to
> follow prescribed treatment that might improve symptoms, we
> may find the alleged intensity and persistence of an individual's
> symptoms are inconsistent with the overall evidence of record.

SSR 16-3p, 2017 WL 5180304, at *9.

Plaintiff challenges many of the ALJ's findings, but her challenges generally

amount to requests to re-weigh the evidence, which the Court cannot do.  *Mullins*

*v. Sec'y of Health & Human Servs.*, 680 F.2d 472, 472 (6th Cir. 1982) ("Our task is

not to reweigh the evidence.  That is solely the province of the Secretary.") (citing

*Wokojance v. Weinberger*, 513 F.2d 210 (6th Cir. 1975)); *see also Haun v.*

*Comm'r of Soc. Sec.*, 107 F. App'x 462, 465 (6th Cir. 2004) ("We may not reweigh

conflicting evidence on appeal, but instead must affirm Judge Davis's decision

because substantial evidence supports it.").  For example, she contends that the

ALJ's findings of mild abnormalities identified in the MRIs are contrasted by the

prescription of pain medications and injection therapy by her pain management

doctors.  (DE 19 at 18.)  However, Plaintiff stopped injection therapy in 2013 and

the ALJ found that fact to be less than fully consistent with Plaintiff's subjective

complaints.  (R. at 22.)  She also disagrees with the ALJ's finding that Plaintiff's

pain was "stable" and her medication improved functionality, because her pain

medications were adjusted following some "stable" visits, and she disagrees with

the ALJ's notations that she opted for conservative treatment for some of her

impairments.  (*Id.* at 18, 21.)  However, the records contain numerous notations

that pain medications "improved functionality" and characterizing her condition as

"stable" that support the ALJ's determination (R. at 279, 281, 286, 288, 290, 292,

297, 299, 301, 306, 312, 317, 319, 323), and the ALJ's finding that Plaintiff's

treatment with prescription medications and epidural injections was inconsistent

with a finding of disability is supported.  *See DiMarzio v. Comm'r of Soc. Sec.*, No.

11-15635, 2013 WL 6161637, at *18 (E.D. Mich. Nov. 20, 2013) (noting that

"Plaintiff's treatment for his physical and mental impairments was modest,

consisting of prescription medication and some epidural steroid injections" and

"[s]uch modest treatment is inconsistent with a finding of disability") (citation

omitted).  While Plaintiff posits that "stable" could still mean "disabling," it is her

burden to prove disability and she supplies no evidence that the doctors'

characterization of her condition as "stable" should be understood to mean

"disabling."

Plaintiff contends that "the ALJ appears to be playing doctor in asserting

that while there is sensory loss [in her upper and lower extremities], no restrictions

would be placed on her ability to function." (DE 19 at 19.) However, the burden

is on Plaintiff, not the ALJ, to establish an RFC that is work-preclusive by

demonstrating that she has *functional limitations attributable* to a severe

impairment. *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008)

(plaintiff bears the burden of proof at the first four steps of the sequential

evaluation). Plaintiff has failed to point to any record evidence supporting a

functional limitation resulting from the findings of reduced sensation in Plaintiff's

upper and lower extremities.

Plaintiff also asserts that the ALJ failed to take into account her claims that

her medical care was limited by transportation and/or insurance issues. (DE 19 at

20.) This is not accurate. The ALJ acknowledged that the record evidence

contained complaints by Plaintiff regarding insurance and/or transportation issues,

which led at times to prescription of alternate medications. (R. at 17-18, 21.)

However, the record also shows that lack of insurance and/or transportation was

not the reason for many of her failures to follow her prescribed medication

treatment regimen. (*See, e.g.* R. at 290 ("[S]he has not been taking her Lyrica

since approximately in January since she lost [the] script and did not want to be on

it."), 327 ("[M]ethadone caused her to miss her period so she stopped it."), 349

("She says she stopped her pain medications because they are no longer offering

any relief. She also stopped the Lyrica because she ran out, but does say it was

helpful for her."), 379 ("Refused trigger point injections."), 597 ("Patients state[s]

she refuses to establish with psych.  Also refuses to try any other medications

besides BZD to help with her anxiety/insomnia.").)  Further, the ALJ recognized

that Plaintiff continued to receive medical care throughout the relevant time period,

and Plaintiff has failed to specify how her claimed insurance or transportation

issues would dictate a different RFC, as is her burden.

Plaintiff's arguments essentially are that the ALJ could have viewed the

evidence differently.  However, if the Commissioner's decision is supported by

substantial evidence, it must be affirmed, even if the reviewing court would decide

the matter differently, and even if substantial evidence supports the opposite

conclusion.  *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012)

(holding that that "harmless error analysis applies to credibility determinations");

*Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988)

("Although the record is replete with inconsistent medical reports and [the

claimant's] own conflicting testimony, we acknowledge the discretion vested in the

ALJ to weigh all of the evidence.") (citation omitted).  The ALJ's evaluation of

Plaintiff's subjective complaints is supported by substantial evidence and

Plaintiff's claim of error should be denied.

**F.     Conclusion**

Plaintiff has the burden of proof on her three statements of error, all of which relate to Steps 1-4 of the sequential evaluation. *Walters*, 127 F.3d at 529 ("during the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five."). Plaintiff has not shown legal error that would upend the ALJ's decision. For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 19), **GRANT** Defendant's motion for summary judgment (DE 21), and **AFFIRM** the Commissioner of Social Security's decision.

**III.     PROCEDURE ON OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 19, 2019        s/*Anthony P. Patti*
                              Anthony P. Patti
                              UNITED STATES MAGISTRATE JUDGE